UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE


EFREM RAHOMAN DOUGLAS )
)
v. ) NO. 2:05-CR-07
) NO. 2:06-CV-236
UNITED STATES OF AMERICA )


**<u>MEMORANDUM OPINION</u>**

Efrem Rahoman[1] Douglas ("petitioner" or "Douglas"), a federal prisoner, has filed

a "Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A

Person In Federal Custody," [Doc. 37], an amended motion, [Doc. 45], and two motions

to expand the record, with various documents attached thereto. [Docs. 2 and 25 and in No.

2:06-CV-236[2]]. The government has responded in opposition, [Doc. 47], and Douglas

has replied. [Doc. 55]. The matter is now ripe for resolution.

The Court has reviewed the government's answer, the transcripts and records of

prior proceedings, the material submitted under Rule 7 and the entire record and has

---

[1] Douglas spells his middle name "Rahaman" in his § 2255 motion. It was spelled "Rahoman" in the indictment.

[2] Petitioner's motions to expand the record were docketed in case No. 2:06-CV-236, but not in case No. 2:05-CR-07. These motions were previously granted.

determined that it is conclusively shown that petitioner is not entitled to relief under §
2255 and, therefore, no evidentiary hearing is warranted. For the reasons which follow,
the petitioner's motion lacks merit and will be DENIED.

## I. Procedural Background

Douglas was indicted by the federal grand jury on January 25, 2005, in a single
count indictment charging him with possession with the intent to distribute 50 grams or
more of cocaine base. [Doc. 1]. On March 3, 2005, the government filed an information
pursuant to 21 U.S.C. § 851(a)(1), giving notice of its intent to seek enhanced punishment
by reason of two prior felony drug convictions. [Doc. 6]. If convicted of the charged
offense, therefore, Douglas was subject to a mandatory term of life imprisonment pursuant
to 21 U.S.C. § 841(b)(1)(A). ("If any person commits a violation of [§ 841] [involving 50
grams or more of cocaine base] after two or more prior convictions for a felony drug
offense have become final, such person shall be sentenced to a mandatory term of life
imprisonment without release . . .").

On April 13, 2005, defense counsel moved for an extension of the time to file
pretrial motions and the trial date because she needed "additional time to conduct further
investigation in the case," and "to seek resolution of the case through negotiations to
dismiss the notice of enhancement pursuant to 21 U.S.C. § 851." [Doc. 12]. According
to the motion, the "negotiations, if successful, will require that Mr. Douglas forego pretrial
motions as a benefit to the government for withdrawing the § 851 notice." *Id.* On April

14, 2005, defense counsel filed "additional reasons" in "further support of the motion," which included the need to locate a necessary witness. [Doc. 13].

On May 18, 2005, a negotiated plea agreement and agreed factual basis were filed. [Docs. 19, 20]. On May 24, 2005, an amended information pursuant to § 851 was filed which listed only one of defendant's prior felony drug convictions. [Doc. 22]. Pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, the parties agreed to a sentence of 300 months. On June 20, 2005, the defendant entered a guilty plea to the indictment. The Court took the plea agreement under advisement and ordered a presentence report ("PSR"). The PSR was disclosed to the parties on August 12, 2005, and on September 20, 2005, the Court accepted the plea agreement and sentenced petitioner to the agreed upon 300 month term of imprisonment. Judgment was entered on September 27, 2005, and no direct appeal was filed. The instant motion was timely filed on October 10, 2006.[3]

## II.    Factual Background

According to the petitioner, the facts in the case are:

> On May 10, 2002, Douglas was a passenger in a vehicle being driven by Samual Moss. Moss stopped the vehicle at a red light and was waiting for the light to change when two police cars blocked the vehicle in at the intersection by pulling in front and back of the car Moss was driving. The officer

---

[3]    Although filed in this Court on October 10, 2006, the record reflects that the motion was signed by the petitioner on October 3, 2006, and apparently delivered to prison authorities for mailing. The date of filing is thus considered to be October 3, 2006.

approached the vehicle and asked Moss for his drivers license while the other officer approached the passenger side and pulled Douglas from the vehicle and begin [sic] to search him without reason to believe that any criminal activity was occurring, had occurred, or was about to occur. The search revealed over 80 grams of cocaine base, "crack." The cocaine base eventually became the object of a suppression hearing under docket number: 29178, Washington County Courthouse, Jonesborough, Tennessee. At the conclusion of the suppression hearing, the Court ordered the evidence suppressed as the fruits of an illegal search. The state prosecutor moved the Court to dismiss the charges on the basis that there was no evidence apart from the tainted evidence to go forward with a criminal prosecution. The court granted the state's motion and the case was dismissed.

[Doc. 37-2, pp. 3-4].

The PSR, unobjected to by the defendant, presents a somewhat different picture:

7.    The following is the agreed factual basis:

8.    On May 10, 2002, in Johnson City, Tennessee, in the Eastern District of Tennessee, the defendant, Efrem Rahoman Douglas, was involved in the business of trafficking crack cocaine. On the above date, he did possess with intent to distribute sixty-two grams of a mixture and substance containing a detectable amount of cocaine base, a schedule II controlled substance.

9.    State Court records state that on May 10, 2002, an officer of the Johnson City Police Department was dispatched based on a call from ambulance attendants who had observed a vehicle blocking a lane of traffic on North State of Franklin Road at West Market Street, containing two men who appeared to be unconscious. The defendant was in the passenger seat. The smell of marijuana emanated from the vehicle, and both the defendant and the driver appeared to be under the

influence of drugs or alcohol. A search of the defendant's person revealed a cookie shaped substance that was later determined to be 62 grams of cocaine base. Also found in the vehicle was 22.3 grams of marijuana and seven tablets of MDMA (Ecstasy). The driver of the vehicle pled guilty to misdemeanor charges of simple possession of schedule IV, simple possession of schedule VI and casual exchange in State Court.

PSR, p. 4.

The PSR also shows that Douglas was charged in the Washington County Criminal Court with possession of Schedule I and II drugs for resale and simple possession of scheduled drugs as a result of the May 10 events. Douglas moved to suppress the drugs found in the vehicle and on the petitioner's person. A minute entry for the state court proceeding indicates that the motion to suppress was granted on October 14, 2004. The state court judgments from the case establish that the state court charges were then dismissed on December 17, 2004.

## III.    Standard of Review

This Court must vacate and set aside petitioner's sentence if it finds that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, . . ." 28 U.S.C. § 2255. Under Rule 4 of the Governing Rules, the Court is to consider initially whether the face of the motion itself, together with

the annexed exhibits and prior proceedings in the case, reveal the movant is not entitled to relief. If it plainly appears the movant is not entitled to relief, the court may summarily dismiss the § 2255 motion under Rule 4.

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States,* 285 F.2d 733, 735 (6th Cir. 1961). "Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing." *O'Malley*, 285 F.2d at 735 (citations omitted). A motion that merely states general conclusions of law without substantiating allegations with facts is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996).

To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted) (§ 2254 case); *Clemmons v. Sowders*, 34 F. 3d 352, 354 (6th Cir. 1994). *See also United States v. Cappas*, 29 F.3d 1187, 1193 (7th Cir. 1994) (applying *Brecht* to a § 2255 motion). If the sentencing court lacked jurisdiction, then the conviction is void and must be set aside. *Williams v. United States*, 582 F. 2d 1039, 1041 (6th Cir.), *cert. denied*, 439 U.S. 988 (1978). To warrant relief for a non-constitutional error, petitioner must show a fundamental defect in the proceeding that resulted in a complete miscarriage of

justice or an egregious error inconsistent with the rudimentary demands of fair procedure.
*Reed v. Farley*, 512 U.S. 339, 354 (1994); *Grant v. United States*, 72 F. 3d 503, 506 (6th Cir.), *cert. denied*, 517 U.S. 1200 (1996).  In order to obtain collateral relief under § 2255, a petitioner must clear a significantly higher hurdle than would exist on direct appeal. *United States v. Frady*, 456 U.S. 152 (1982).

The Sixth Amendment provides, in pertinent part, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI.  A defendant has a Sixth Amendment right not just to counsel, but to "reasonably effective assistance" of counsel.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In *Strickland*, the Supreme Court set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland* 466 U.S. at 687.  As with any other claim under § 2255, the burden of proving ineffective assistance of counsel is on the petitioner. *Virgin Islands v. Nicholas*, 759 F. 2d 1073, 1081 (3d Cir. 1985).

In considering the first prong of the test set forth in *Strickland*, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688. A defendant asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

The second prong of the *Strickland* test requires that petitioner show counsel's deficient performance prejudiced the defense. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. The petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The *Strickland* Court emphasized that both prongs must be established in order to meet the claimant's burden, and if either prong is not satisfied the claim must be rejected, stating:

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to

approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

*Id.* at 697.

## IV.    Analysis and Discussion

In his § 2255 petition, Douglas phrases his claims of ineffective assistance of counsel in various ways, and his subsequent claims merely reprise, in different form, the same basic argument. In reality his claim boils down to a fairly simple one. He claims ineffective assistance of counsel in that his trial counsel failed to inform him of, and failed to file, a meritorious motion to suppress what he claims was "illegally seized evidence." This claim of course is bottomed on his allegation that he had a meritorious claim as to the suppression of the evidence seized at the time of his arrest on May 10, 2002.

Douglas essentially asserts that there can be "no doubt" of the merit of his claim for suppression because "[a] state court had ordered the evidence suppressed," and the evidence thus would have been inadmissible in federal court, relying on the Supreme Court's decision in *Elkins v. United States*, 364 U.S. 206 (1960) as authority to support his argument. Petitioner's argument fails for two reasons. First of all, he misreads *Elkins*, and secondly, he cannot show that a motion to suppress would have succeeded. In

addition, Douglas cannot show that the negotiation of a plea agreement on his behalf by his counsel which allowed him to avoid a mandatory minimum sentence of life imprisonment by giving up the right to file a motion to suppress which, it appears on the record, was doomed to fail, was anything more than a good tactical decision by counsel.

### A. *Elkins v. United States*

In *Elkins*, the defendant was charged in the district court with possession of a firearm after having related state charges dismissed when the state court suppressed the evidence. The district court assumed that the evidence was seized by state officers as the result of an unreasonable search and seizure but refused to suppress because no federal officers had been involved in the search. The Ninth Circuit affirmed and the Supreme Court granted *certiorari* to address the question: "May articles obtained as the result of an unreasonable search and seizure by state officers, without involvement by federal officers, be introduced in evidence against a defendant over timely objection in a federal criminal trial?"

The Supreme Court, rejecting the so-called "silver platter" doctrine, held

> that evidence obtained by state officers during a search which, if conducted by federal officers, would have violated the defendant's immunity from unreasonable searches and seizures under the Fourth Amendment is inadmissible over the defendant's timely objection in a federal criminal trial. In determining whether there has been an unreasonable search and seizure by state officers, a federal court must make an independent inquiry, whether or not there has been such an inquiry by a state court, and irrespective of how such inquiry

may have turned out. The test is one of federal law, neither enlarged by what one state court may have countenanced, nor diminished by what another may have colorably suppressed.

*Id.*, 364 U.S. at 223-24.

It is clear, therefore, that petitioner's argument that evidence seized by state officers on May 10, 2002, was automatically to be excluded in this federal prosecution cannot be supported by *Elkins*. If a motion to suppress the evidence seized had been filed in his federal prosecution, the federal court would have made an independent inquiry without regard to the holding of the state court on the issue, even if the seizure of the evidence violated state law. "[E]vidence seized in actual . . . violation of state law may nonetheless be admitted in a federal prosecution where the violation concerned would not be such as to require suppression of evidence under federal constitutional law, or federal statutory or case law." *United States v. Dudek*, 530 F.2d 684, 690 (6th Cir. 1976).

The Sixth Circuit has also considered the precise question raised by the petitioner here in a § 2255 proceeding. In *Tinsley v. United States*, the petitioner argued that the district court erred in admitting evidence based on the state court's earlier suppression of the same evidence. Citing *Elkins*, the Sixth Circuit held that the argument lacked merit and "that the district court [is not] constrained by the prior evidentiary rulings of the state court." 107 F.3d 871 (table), 1997 WL 63156 at * 7 (6th Cir. 1997) (unpublished). *See also United States v. Lloyd*, 10 F.3d 1197 (6th Cir. 1993) ("a prior adverse suppression decision in a state court simply does not preclude the federal government, which was not

a party to the state action, from using the evidence in a federal proceeding.")

## B.    The Merit of Defendant's Suppression Motion

Although Douglas argues no basis for suppression of the evidence seized from his person on May 10, 2002, except for his erroneous contention that suppression by the state court required suppression in the federal court, the Court nevertheless needs to consider the question:  "Did Douglas have a meritorious basis for a suppression of the evidence seized?"  The question must necessarily be considered before the court considers whether counsel's advice to Douglas to give up the right to file pretrial motions as part of a plea agreement to avoid the mandatory term of life imprisonment was constitutionally lacking. If Douglas had a clearly meritorious basis for suppression of the evidence against him, counsel's decision to negotiate a plea agreement without filing the motion was likely deficient.  If, on the other hand, petitioner's motion to suppress was meritless, or even of questionable merit, the decision to seek the negotiated plea agreement was not only not deficient, but was clearly the prudent course of action and within the realm of sound strategy for effective trial counsel.

So, did Douglas have a meritorious argument to suppress the evidence?   The answer, on this record, is a clear and emphatic "no".  While Douglas states in his memorandum in support of his motion that he was, on May 10, 2002, a passenger in a vehicle which was stopped at a red light waiting for the light to change when the vehicle was blocked in the intersection by police cars and that he was pulled from the vehicle and

searched without reason, the record paints an entirely different picture.  The unobjected to PSR establishes that, on May 10, 2002, a Johnson City, Tennessee police officer was dispatched based on a call from ambulance attendants who had reported a vehicle blocking a lane of traffic on North State of Franklin Road at West Market Street.  The vehicle was occupied by two men who appeared to be unconscious.  The defendant was in the passenger seat.  The smell of marijuana emanated from the vehicle and both occupants appeared to be under the influence of drugs or alcohol.  A search of the defendant's person revealed a "cookie" containing 62 grams of cocaine base.  At the time of the entry of his guilty plea in this Court, Douglas admitted that he possessed the 62 grams of cocaine base with the intent to distribute it.

The record in this case does not establish the basis for the state court's suppression of the cocaine base.  That is irrelevant, however, since this federal court was required to make an independent determination in any event, irrespective of what the state court's ruling was.  Based on this Court's review of the record in this case, a clear basis for admission of the evidence is apparent.  The officer clearly had probable cause to search both the vehicle and its occupants.  When the officer arrived at the scene, he was confronted with two men who appeared to be unconscious in a vehicle blocking a lane of traffic, and the smell of marijuana was coming from the car.  Although searches must normally be conducted pursuant to a warrant, a warrantless search of an automobile that has been lawfully stopped is permissible if the search is based on probable cause.  *United*

*States v. Ross*, 456 U.S. 798, 823 (1982); *United States v. Pasquerille*, 20 F.3d 682, 690 (6ᵗʰ Cir. 1994). "Probable cause is defined as reasonable grounds for belief, supported by less than *prima facie* proof but more than mere suspicion, and is found to exist when there is a fair probability that evidence of a crime will be located on the premises of the proposed search." *United States v. Jackson*, 420 F.3d 299, 306 (6ᵗʰ Cir. 2006) (internal quotation marks and citations omitted).

In determining the admissibility of evidence seized during the warrantless search of a vehicle during a traffic stop, two questions must generally be answered: first, whether the initial stop of the vehicle was supported by reasonable suspicion and, second, whether the subsequent search of the vehicle was support by probable cause. *United States v. Foster*, 376 F.3d 577, 584-85 (6ᵗʰ Cir. 2004). That the answer to the first question is "yes" is beyond debate. The officer was dispatched to the scene as the result of a call from ambulance attendants who reported that an automobile, occupied by two individuals who appeared to be unconscious, was blocking a lane of traffic. As to the second question, the odor of marijuana from the automobile alone, even without considering it in combination with the condition of the occupants of the automobile, constituted probable cause to search the vehicle. *United States v. Garza*, 10 F.3d 1241, 1245 (6ᵗʰ Cir. 1993). The Sixth Circuit has consistently followed *Garza* in holding that the detection of a narcotic's odor, by itself, is sufficient to establish probable cause. The case law was recently surveyed by the Sixth Circuit.

14

. . . we have followed *Garza* consistently in holding that the detection of a narcotic's odor, by itself, is sufficient to provide probable cause to conduct a lawful search of a vehicle. *See United States v. Puckett*, 422 F.3d 340, 343 (6th Cir. 2005) (upholding the denial of a motion to suppress where police "smelled and saw in open view the marijuana in the seat and "[t]herefore, there was probable cause to search the car at that point"); *Foster,* 376 F.3d at 588 (holding that "when the officers detected the smell of marijuana coming from Foster's vehicle, this provided them with probable cause to search the vehicle without a search warrant" which "therefore turned a lawful *Terry* stop into a lawful search"); *United States v. Elkins*, 300 F.3d 638, 659 (6th Cir. 2002) (observing that "[t]his court has held that an officer's detection of the smell of marijuana in an automobile can by itself establish probable cause for a search" and noting that "[t]he same may be true when marijuana is smelled within a home"). *See also Simpson*, 520 F.3d at 544-45 (holding that probable cause to search a vehicle existed "upon the alert of a trained narcotics-detection dog"); *United States v. Littleton*, 15 Fed. Appx. 189, 193 (6th Cir. 2001) (rejecting defendant's argument that probable cause was lacking because drug detection dog was unreliable, and holding that training and reliability of drug dog was irrelevant because smell of marijuana was sufficient to establish probable cause to permit warrantless search of vehicle).

*United States v. Crumb*, 287 Fed. Appx. 511, 2008 WL 2906770 (6th Cir. 2008).

*United States v. Crumb*, decided in July, 2008, presents a similar factual pattern to the present case. In *Crumb*, the defendant was a passenger in a car when a traffic stop was made. As the officer approached the car, he smelled an odor of marijuana emanating from the vehicle. The occupants were removed from the car and a pat-down search was conducted. After both the driver and the petitioner were handcuffed and placed in a patrol car, the vehicle was searched and various drugs and a semi-automatic pistol were found.

The court held that "upon smelling the marijuana odor and seeing the marijuana cigarette, the police officers had reasonable grounds to believe that further evidence of a crime may be found inside the vehicle." *Id*. at **3. There is also little doubt under the circumstances of this case that the officer was entitled to remove Douglas from the vehicle while the search was conducted and to conduct a frisk to protect himself, leading to the discovery of the crack cocaine, *see United States v. Hensley*, 469 U.S. 221 (1985) and, when a "pat-down reveal[s] narcotics rather than a weapon . . . it is immaterial that what was discovered is not the article for which the police officers were originally and specifically looking." *United States v. Walker*, 181 F.3d 274 (6th Cir.) (upholding seizure of crack cocaine discovered when the officer felt a bulge underneath defendant's pants that he recognized as a potential controlled substance), *cert. denied*, 528 U.S. 980 (1999).

### C.     Counsel's Performance in Negotiating the Plea Agreement

As noted above, the reasonableness of counsel's performance is judged "from counsel's perspective at the time of the alleged error and in light of all the circumstances . . ." *Kimmelman*, 477 U.S. at 381. Defendant's counsel, an experienced lawyer with the Federal Defender's Service, when confronted by a client who faced a mandatory life sentence, chose to aggressively pursue plea negotiations on behalf of Douglas in an effort to avoid the mandatory life sentence. The federal defender was appointed to represent Douglas on February 25, 2005, sought a continuance of the motion deadline and trial date to allow further investigation of the case and to locate a necessary witness, and, then on

May 10, 2005, made a very compelling and persuasive argument, [Doc. 58-1], directly to the United States Attorney for this district[4] seeking withdraw of the § 851 notice of enhancement, resulting in the agreed upon 25 year sentence.[5] Although Douglas asserts that his attorney failed to do a proper investigation, he offers no facts in support of his conclusory allegation.

Where, as here, the record contains no evidence which would justify the granting of a motion to suppress, the petitioner has failed to meet his burden of showing that his attorney's performance was deficient. Counsel's decision to pursue a favorable plea agreement, instead of pursuing a motion to suppress, was not only within the realm of sound strategy, but was, in fact, a tactical decision that represented the most prudent strategy in the best interest of Douglas. Douglas's argument also ignores that the filing of an unsuccessful motion to suppress would likely have eroded counsel's ability to negotiate a favorable settlement of the case.

### D. The Voluntariness of Petitioner's Guilty Plea

The petitioner makes one further argument that needs to be addressed. Petitioner asserts that his answers to the Court's questions at the change of plea hearing on June 20,

---

[4] The terms of the plea agreement sought by counsel on defendant's behalf could not be approved by the Assistant United States Attorney assigned to the case, but, rather, required the approval of the United States Attorney. Although Douglas has objected to the inclusion in the record of counsel's letter to the United States Attorney, [Doc. 58-1], the authenticity of the letter is clear and the Court remembers the letter as the one reviewed by the Court at petitioner's change of plea hearing.

[5] An agreement by the United States to the imposition of a 25 year of imprisonment, rather than the mandatory life sentence, represented a very significant benefit to Douglas, who was 30 years old at the time of sentencing.

2005, were not voluntarily made because "counsel was at all times telling Douglas what he should say and in most every instance counsel was in the ear of Douglas telling him to just answer yes." (quotation marks omitted). [Doc. 45 at 3]. Petitioner's contention lacks credibility for two reasons. First of all, this Court pays careful attention to the demeanor of the defendant at the change of plea hearing and would not have accepted petitioner's plea of guilty if counsel was telling him what to say.[6] In fact, this Court made a specific finding, based upon the Court's observations of the Douglas's demeanor during the change of plea colloquy, that the petitioner's plea of guilty was knowingly and voluntarily made.

Secondly, however, and more fundamentally, petitioner's claims are contradicted by the record in the case. Petitioner's plea agreement, which petitioner at the change of plea hearing acknowledged that he had read and understood, provided:

> 11. The defendant has throughly reviewed this agreement with his attorney and defendant's attorney has fully and completely answered all of the defendant's questions about this guilty plea and its consequences, including questions about sentencing, and has provided the defendant with satisfactory advice and representation. In return for the concessions made by the government in this agreement the defendant is pleading guilty voluntarily and with an understanding of the consequences of his plea of guilty, including sentencing . . . .

[Doc. 19 at 4]. Douglas further acknowledged that he understood his right to persist in a

_____

[6] It should be noted that not all of the Court's questions at the change of plea hearing were answered "yes". In particular, the petitioner answered "no, sir" when asked if anyone had pressured him to plead guilty. [Doc. 46 at 9].

plea of not guilty, his right to a jury trial and that he was entering his plea of guilty voluntarily and not as the result of force or threats . . ." *Id*. at 2. He also stated that his attorney had fully explained "any defenses that he might have," *Id*., and, as set forth above, that he was satisfied with the advice and representation of counsel. *Id*. at 4.

This Court scrupulously followed the requirements of Fed. R. Crim. P. 11 and conducted a proper, clear and thorough plea colloquy. Where the court follows the requirements of Rule 11, "the defendant is bound by his statements in response to the court's inquiry." *Baker v. United States*, 781 F.2d 85 (6th Cir. 1986) (quoting *Moore v. Estelle*, 526 F.2d 690, 696-97 (5th Cir. 1976)). Petitioner's decision to lie to the Court cannot amount to prejudice under *Strickland*. *Warner v. United States*, 975 F.2d 1207, 1212 (6th Cir. 1992) (citing *Worthen v. Meachum*, 842 F.2d 1179, 1184 (10th Cir. 1988)).

## V. Conclusion

For the reasons set forth above, the Court holds that petitioner's conviction and sentencing were not in violation of the Constitution or laws of the United States and his motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 will be DENIED.

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals disapproves of the issuance of blanket denials of

certificates of appealability.  *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001).  The district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id*. at 467.  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473, 120 S. Ct. 1595 (2000).  *Id*.

Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  Having examined each of the petitioner's claims under the *Slack* standard, the Court finds that reasonable jurists could not find that this Court's dismissal of petitioner's claims was debatable or wrong.  Therefore, the Court will deny petitioner a certificate of appealability as to each issue raised by him.

A separate order will enter.

ENTER:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE